# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

BERRY MORROW,
ADC #143825                                                                    PLAINTIFF

V.                                    5:13CV00098 SWW/JTR

DAVID KELLEY, Lieutenant,
Cummins Unit, ADC, et al.                                               DEFENDANTS

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

# INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I. Introduction

Plaintiff, Berry Morrow, filed this *pro se* § 1983 action alleging that, on November 18, 2012, Defendants violated his constitutional rights during a shake down that was conducted at the Cummins Unit of the Arkansas Department of

Correction ("ADC"). The only remaining Defendant, David Kelley, has filed a Motion for Summary Judgment seeking dismissal of all claims against him. *Doc. 61*.[1] Plaintiff has responded. *Doc. 83*. The motion is ripe for disposition.

## II. Facts

Per his deposition testimony, Plaintiff admits that on November 18, 2012, while correctional officers were engaged in the collection of inmate mattresses, he lay down on the floor of his cell. *Doc. 61, Ex. F at 8, 10*. Plaintiff states that his intent in doing so was to demonstrate that correctional officers regularly used force without legitimate reason. *Id. at 11*. While in this position, he refused to respond to the orders given him by correctional officers. *Id. at 13*.

Shortly thereafter, Defendant Kelley was contacted by his subordinate officers and informed about the situation in Plaintiff's cell. *Doc. 63 ¶ 9*. Plaintiff admitted in his deposition testimony that Defendant Kelley approached the door to his cell and directed him to submit to handcuffing. *Doc. 61, Ex. F at 15*. Defendant Kelley also warned Plaintiff that failure to comply with his orders would result in the use of force.

---

[1] Plaintiff initially brought this action against Defendants David Kelley, Erikka Boykin, Justin Reed, Justin Holstead, Jonathan Ashcraft, LaJohn Carter, Brittany Burgess, Lucas Railford, Gaylon Lay, and Larry May. *Doc. 2*. Defendants Boykin, Reed, Ashcraft, Burgess, May, and Lay were dismissed on December 11, 2013. *Doc. 42*. Plaintiff moved to dismiss Defendants Holstead, Carter and Railford on March 12, 2014. *Doc. 48*.
  Plaintiff's excessive force claims against Defendant Kelley are the only remaining claims in this lawsuit.

*Id. at 16.* Despite Defendant Kelley's orders and threatened usage of force, Plaintiff refused to move. *Id.*

A can of O/C 1.3 Aerosol Fogger - a chemical agent- was then deployed into Plaintiff's cell to force his compliance. *Doc. 63 ¶ 16.* Shortly thereafter, Plaintiff rose and submitted to handcuffs. *Id. ¶ 19.* He admits that he was then taken directly to the shower. *Doc. 61, Ex. F at 21.* He also admits that he was evaluated by a nurse after his removal from the cell. *Id. at 22.* He alleges, however, that Defendant Kelley 'snatched' down his pants and underwear after removing him from the cell in order to humiliate him. *Id. at 23.*

### III.  Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).   The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.

*Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### IV. Analysis

Defendant Kelley argues that: (1) Plaintiff cannot sustain an excessive force claim against him; (2) Plaintiff's official capacity claims should be dismissed because they are barred by sovereign immunity; and (3) he is entitled to qualified immunity.  For his part, Plaintiff has responded to these arguments via a series of nineteen enumerated 'objections.'  *Doc. 83.*  The Court will address each argument, and any relevant objections, in turn.

**A. Plaintiff's Excessive Force Claims**

In evaluating inmate excessive force claims, the core judicial inquiry is whether the relevant force was applied in a good-faith effort to maintain discipline, or

maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). In determining whether a prison official acted maliciously and sadistically, courts should consider: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7.

In this case, it is undisputed that Plaintiff refused to respond to correctional officers' orders to rise from the floor of his cell and be handcuffed. *Doc. 61, Ex. F at 16*. Plaintiff *admits* that, given his refusal to move or otherwise comply with orders,[2] he foresaw officers entering the cell and handcuffing him. *Id*. Based on Plaintiff's admitted refusal to comply with the orders given by Defendant Kelley and other correctional officers, the Court concludes that Plaintiff could only have been extracted from his cell by some use of force.

The Court finds that the amount of force used was properly calibrated to Plaintiff's refusal to move. The United States Court of Appeals for the Eighth Circuit has held that a limited use of capstun or "pepper spray" to control recalcitrant inmates

---

[2] In his Response, Plaintiff claims that he did not 'refuse' any order given him by correctional officers. *Doc. 83 at 1-2*. He does not elaborate, but in his deposition testimony he appears to draw a distinction between refusing orders and simply failing to obey them. *Doc. 61, Ex. F at 18*. Regardless of the semantic distinction between refusing an order and failing to obey it, the undisputed fact remains that Plaintiff did not comply with the officers' verbal commands to rise from the floor and submit to handcuffs.

constituted a "tempered response" when compared to other forms of force. *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000). The handheld video evidence provided by Defendant indicates that Plaintiff was subjected to the chemical agent only for as long as was necessary to secure his compliance. *Doc. 61, Ex E. at approximately 1:29 to 3:13*. After deploying the O/C spray, Defendant Kelley can be heard repeating his previous orders to Plaintiff to stand up and approach the door for handcuffing. *Id*. Once Plaintiff complies and is successfully restrained, he is immediately removed from the cell. *Id*.

Plaintiff argues that the use of a chemical agent was unnecessary. *Doc. 83 at 1*. As noted, however, the limited use of such agents where an inmate refuses to comply with the orders of correctional officers is permissible. Based on the video evidence, the use of the chemical agent was limited in duration and there is nothing in the video that suggests it was deployed with a malicious or sadistic intent to cause harm.

Furthermore, based on Plaintiff's admitted recalcitrant behavior and his refusal to obey repeated orders to arise from the floor of his cell, the threat reasonably perceived by Defendant Kelley justified the use of limited force (in the form of O/C spray) to get Plaintiff to obey orders and submit to being handcuffed. Defendant Kelley and the other officers had no way of knowing whether Plaintiff was concealing

a weapon under his body or elsewhere on his person. *Doc. 62 at 6*. Plaintiff admitted in his deposition that Defendant Kelley and the other officers were unable to see if he had any items concealed under his body, in his shoes, or in his mouth. *Doc. 61, Ex. F. At 14.*[3] Based on those undisputed facts, the Court concludes that the potential danger created by Plaintiff's conduct justified the limited use of a chemical agent.

Lastly, the Court finds that Defendant Kelley made several efforts to avoid the need to use any force against Plaintiff. The handheld video establishes that Defendant Kelley issued Plaintiff three verbal orders to stand and be handcuffed. *Doc. 61, Ex E. at approximately 0:55 to 1:23*. Defendant Kelley also explicitly warned Plaintiff that his failure to comply with the orders would result in him being 'sprayed.' *Id*. The O/C spray was used only after Plaintiff refused to comply with those three orders. *Id*. Additionally, the video reveals that Plaintiff was taken directly to the shower after his removal from the cell. *Id. at approximately 3:29 to 5:22*.[4] Finally, the video establishes that Plaintiff was allowed to wash the chemical residue

---

[3]In his Response, Plaintiff argues that officers knew that he did not have a weapon based on his punitive status and close monitoring by staff. *Doc. 83 at 3*. Of course, that in no way ruled out the possibility that Plaintiff might have had a makeshift weapon.

[4]Plaintiff argues that he was taken to the furthest shower for the purpose of "parading" him around and allowing the chemical agent to linger. *Doc. 83 at 3*. Plaintiff, however, does not provide any evidence to support this allegation. Regardless, the video demonstrates that Plaintiff was moved from his cell to the shower area within roughly two minutes.

from his body. *Id.*[5]

Based on the foregoing undisputed facts, the Court concludes that, as a matter of law, Plaintiff is unable to sustain an excessive force claim against Defendant Kelley.

**B. Sovereign Immunity**

Defendant Kelley also argues that Plaintiff's official capacity claims are barred by sovereign immunity. The Court agrees. It is well established that a suit against a state or municipal official in their official capacity is akin to a claim against the entity for which he or she is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As such, a suable "person" under 42 U.S.C. § 1983 does not include a state, a state agency, or a state official sued in their official capacity for damages. *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989).

**C. Qualified Immunity**

Finally, Defendant Kelley argues that he is also entitled to qualified immunity. To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light

---

[5] Plaintiff alleges that Defendant Kelley removed his pants and underwear after the cell extraction in an attempt to humiliate him. *Doc. 83 at 2*. The video, however, shows only that Defendant Kelley assisted Plaintiff, who was still suffering from the effects of the chemical agent, in removing his pants, underwear, and shoes in preparation for showering. *Doc. 61, Ex E. at approximately 5:32 to 6:00.*

most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[6] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009). The Court has already determined that Defendant Kelley did not use excessive force in extracting Plaintiff from his cell on November 18, 2012. Accordingly, it also concludes that he is entitled to qualified immunity as the facts shown, viewed in a light most favorably to the Plaintiff, do not establish a violation of a constitutional right.

## V. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendant Kelley's Motion for Summary Judgment (*Doc. 61*) be GRANTED, and this case DISMISSED, WITH PREJUDICE.

2.    The Court should certify that, pursuant to 28 U.S.C. § 1915(a)(3), an *in*

---

[6] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

*forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

Dated this 22nd day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE